IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                    Case No. 13-10112-01-12-JTM

GERALD BEASLEY, *et al.*,

Defendants.

MEMORANDUM AND ORDER

The defendants are charged with conspiring to participate in various offenses including drug trafficking and have challenged the government's plans to introduce various statements of the defendants as hearsay. The government contends these statements are admissible as the statements of co-conspirators. The court conducted an extensive evidentiary hearing in which the government presented evidence relating to the statements, which are largely recorded in court-approved wiretaps. After having fully reviewed the evidence and the memoranda filed by the parties, the court finds that alleged co-conspirator statements should be admitted.[1]

---

[1]  In addition to the general issue of the admissibility of co-conspirator statements, there are also six motions by individual defendants seeking to join in arguments presented by codefendants. The government has not opposed these motions, which are hereby granted. All of the parties have submitted post-hearing memoranda on the relevant issues. Defendant Smith's memorandum includes a Motion to Exclude (Dkt. 417) evidence presented by the government. Finding the cited statements are admissible pursuant to Rule 801(d)(2)(E), the defendant's motion is accordingly denied.

Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a "statement is not hearsay if ... [t]he statement is offered against an opposing party and … was made by the party's coconspirator during and in furtherance of the conspiracy." In order to admit evidence under Rule 801(d)(2)(E), the court must determine by a preponderance of the evidence that (1) the conspiracy existed, (2) the declarant and the defendant were members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy. *See United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir.), *cert. denied*, 513 U.S. 977 (1994); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir.1995). One of the ways a district court may make these determinations is by holding a *James* hearing outside the presence of a jury. *Urena*, 27 F.3d at 1491. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979).

With respect to these three elements, the government demonstrates the existence of a conspiracy when it shows that (1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent. *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).

To establish an agreement, the government is not restricted to "direct proof of an express agreement on the part of the defendant. Instead the agreement may be informal and may be inferred entirely from circumstantial evidence." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004). Such circumstantial evidence may arise from "the joint appearance of defendants at transactions and negotiations in furtherance of

the conspiracy; the relationship among codefendants; mutual representation of defendants to third parties; and other evidence suggesting unity of purpose or common design and understanding among conspirators to accomplish the objects of the conspiracy." *United States v. Wardell*, 591 F.3d 1279, 1287-88 (10th Cir. 2009)(citing *United States v. Dowlin*, 408 F.3d 647, 657 (10th Cir. 2005)). Interdependence exists "if the activity of a defendant … facilitated the endeavors of other alleged co-conspirators or facilitated the venture as a whole." *Wardell*, 591 F.3d at 1219.

The second element of Rule 801(d)(2)(E) admissibility, a defendant's membership in a conspiracy, "is proven by evidence tending to show that the defendant shared a common purpose or design with his alleged coconspirators." *United States v. Horn*, 946 F.2d 738, 740 (10th Cir. 1991) (citation omitted). By contrast, a defendant's mere association with persons known to be involved in criminal activity is insufficient to establish participation in a criminal conspiracy. *Id.* at 741.

Finally, a statement is made "during the course" of a conspiracy '"if it is made before the objectives of the conspiracy have either failed or been achieved.'" *Owens*, 70 F.3d at 1126 (quoting *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993) (*en banc*)). A statement is "in furtherance of the conspiracy" if it is "intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986). A statement is in furtherance of a conspiracy if it explains "events of importance to the conspiracy in order to facilitate its operations," updates the status of the conspiracy to its members, identifies another conspirator, or "serve[s] to maintain trust and

cohesiveness" among the conspirators. *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987).

In deciding the issue of furtherance, "the court does not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993) (citation omitted). "[N]o talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy ... [t]o the contrary, this determination must be made by examining the context in which the challenged statement was made." *United States v. Perez*, 989 F.2d 1574, 1578-79 (10th Cir. 1993). Moreover, there is no requirement that "the statements must actually further the conspiracy to be admissible. Rule 801(d)(2)(E) explicitly says statements need be 'in furtherance of the conspiracy' not that they 'further the conspiracy.' It is enough that they be intended to promote the conspiratorial objectives." *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir. 1990) (quoting *Reyes*, 798 F.2d at 384).

"[M]ere narratives between coconspirators or narrative declarations of past events are not in furtherance of a conspiracy." *Roberts*, 14 F.3d at 514-15. Examples of statements that have been found to be in furtherance of a conspiracy include "statements identifying other members of the conspiracy, statements describing their roles in the conspiracy, statements discussing the particular roles of other coconspirators, statements made to induce enlistment or further participation in the group's activities, statements made to prompt further action on the part of the conspirators, statements made to reassure members of a conspiracy's continued

4

existence, statements designed to allay the fears and suspicions of another coconspirator, and statements made to keep coconspirators abreast of an ongoing conspiracy's activities." *United States v. Stancle*, 2016 WL 2858861, *4 (N.D. Okla. May 16, 2016) (citing *Owens*, 70 F.3d at 1125 (10th Cir. 1995)); *United States v. Williamson*, 53 F.3d at 1520; *Roberts*, 14 F.3d at 515; *Perez*, 989 F.2d at 1578).

The government bears the burden of establishing the admissibility of out-of-court statements by co-conspirators. *Id*. In determining whether the government has met its preponderance of the evidence burden under Fed. R. Evid. 801(d)(2)(E), the court may consider the hearsay statement itself, as well as independent evidence. *Bourjaily v. United States*, 483 U.S.  171, 181 (1987). "'[T]here need only be some independent evidence linking the defendant to the conspiracy.' " *United States v. Lopez–Gutierrez*, 83 F.3d 1235, 1242 (10th Cir.1996) (quoting *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir.1987)). To be sufficient, the independent evidence need not be substantial, but it must be something other than the proffered statement. *Id.*

The Court is not bound by the rules of evidence in making the preliminary findings required to admit evidence under Rule 801(d)(2)(E). *Owens*, 70 F.3d at 1124. Rather, in assessing whether the government has met its burden at the *James* hearing, the district court has the discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *Id.*

In addition, any out-of-court statements made by a defendant himself in intercepted telephone phone calls are admissible as prior admissions of a party. See Fed. R. Evid. 801(d)(2)(A) (statements made by and offered against an opposing party are not hearsay). Moreover, statements of a coconspirator are admissible against other coconspirators regardless of whether the coconspirator is present at the conversation or whether his name is mentioned, as there are no such requirements in Rule 801(d)(2)(E). *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011) (rejecting defendant's arguments that a coconspirator's statements were not admissible against him because "he did not participate in the conversations at issue and was not mentioned in the course thereof").

At the evidentiary hearing, ATF Special Agent Jason Fuller described the course and results of the extensive multi-agency investigation into criminal activity allegedly undertaken by defendant Gerald Beasley, his brother Terry Beasley, and their associates. The court finds Special Agent Fuller a credible witness.

The ATF began investigating Gerald Beasley when it obtained information indicating that he had more extensive financial assets than would be obtained through the operation of his restaurant, known as Tiara's Place. The investigation, which included both mobile surveillance and the use of pole cameras, showed activity consistent with ongoing drug trafficking, such as meetings with individuals after hours at the restaurant for short periods of time, as well as traveling to a house which informants reported was a storage house for narcotics.

The investigation also had information that Gerald Wilson, Carlos Beasley, and Herbert Jones were involved in narcotics trafficking. Officers obtained a search warrant

for a package which had been shipped to the 655 N. Estelle house, a stash house associated with Gerald Beasley and his son Antoine. Inside the package, officers found a large amount of marijuana.

Officers also obtained interviews with witnesses who were willing to report on criminal activity by the Gerald Beasley. For example, Terry Ross told investigators that he was a driver for Gerald Beasley on excursions where counterfeit checks were cashed, that Gerald Beasley carried a firearm, and that Gerald Beasley was involved in both EBT card fraud and drug trafficking.

This investigation led to court-authorized wiretaps of telephones used by members of the alleged conspiracy. This court by separate Order has upheld the issuance of the wiretaps for telephones used by Gerald and Antoine Beasley, finding they were supported by probable cause. (Dkt. 390). In addition to the statements contained in the wiretaps themselves, and the evidence from the state of the investigation documented in the affidavits filed by law enforcement officers, Special Agent Fuller described the nature of the ensuing investigation, including the results of searches conducted pursuant to warrant.

Law enforcement officers conducted numerous searches in 2013. From Gerald Beasley's restaurant, Tiara's Place, they  found vision cards which did not belong to the defendant, plastic baggies with black residue, a scale which tested positive for heroin, a money counter, over $50,000 in United States currency, two handguns and surveillance equipment. They also found a video surveillance system and recordings from the system's six cameras for the previous three months. At 655 N.Estelle, they found

firearms, ammunition, over 200 grams of marijuana, and equipment for growing marijuana. At 1122 N. Piatt, a stash house associated with Gerald Beasley, officers found numerous phones, a firearm, ammunition, over 300 grams of heroin, over 1000 grams of marijuana, approximately 10 grams of crack cocaine, over 200 grams of cocaine, a large amount of baking soda, cooking materials to manufacture crack cocaine, packaging material, and over $10,000.00 in United States currency. At the residence of Gerald and Helen Beasley, officers found numerous phones and computers, drug paraphernalia, and over $500.00 in United States currency. At the residence of Antoine Beasley, officers found 100 grams of marijuana, a vision card (not belonging to the defendant), medical marijuana patient cards issued to Antoine Beasley from Colorado and California, narcotic drug packaging material, over $250,000.00 in United States currency, two firearms, and numerous cell phones.

Investigators executed additional warrants in 2014. At the residence of Antoine Beasley, they found over 500 grams of marijuana, plastic marijuana bags, numerous cell phones, and United States currency. Upon the arrest of defendant Terry Beasley, officers found cocaine, a box for electronic scales and drug packaging paraphernalia, computers, cell phones, a check printing machine and United States currency.

All of the foregoing evidence exists in addition to the numerous calls recorded as a result of the wiretap authorizations. This evidence, in combination with the intercepted telephone calls, demonstrates by a preponderance of the evidence the existence of multiple, interconnected conspiracies for the distribution of narcotics

(including cocaine, crack, heroin, marijuana), and illegal financial transactions (bank fraud, program fraud, and money laundering).

The evidence shows that it is more likely true than not that Gerald Beasley is a large distributor of cocaine and heroin, which he obtains from the Juan and Innocent Ibarra organization. The intercepted calls and other evidence demonstrate that he and Antoine Beasley, Brandon Smith, Larry Reed, Herbert Jones, and Gerald Wilson were involved in the conspiracy to distribute cocaine, and show the activities of Gerald Beasley, Antoine Beasley, Terry Beasley, and Stephen Smallwood in the distribution of heroin. Gerald Beasley conspired with unspecified individuals for the distribution of crack cocaine. Evidence also supports the conclusion that defendants Gerald Beasley, Antoine Beasley, Helen Beasley, and Brandon Smith were involved in a conspiracy to distribute marijuana; that Gerald Beasley, Helen Beasley, and Antoine Beasley conspired to launder a large amount of money produced by criminal activity, that Gerald Beasley and William Parker conspired to commit bank fraud through the use of false checks,[2] and that Gerald Beasley conspired with unnamed persons to commit fraud through the misuse of EBT cards.[3]

---

[2]    The government has cited evidence indicating Parker's potential involvement in the false check scheme. Subsequently, the government and Parker agreed that the statements identified at the *James* hearing will not be offered against Parker in any of the counts in which he is a named defendant, and the court so ordered. (Dkt. 418).

[3]    In prior Orders, the court has found that the government's evidence, more likely than not, has demonstrated the existence of criminal activity. Denying the defendant's challenge the validity of the wiretaps, the court found that the affidavit for the first wiretap "documents the existence of an on-going open-ended criminal enterprise." (Dkt. 390, at 4). Although the court noted various challenges to some aspects of the affidavits for warrant, the court concluded that such arguments "fail to obscure the probable cause amply demonstrated in the affidavit's lengthy factual recitation." (*Id.* at 6). In rejecting Terry Beasley's motion to suppress evidence obtained at the time of his arrest, the court reviewed the

The narcotics conspiracies are linked, and the actions of the participants were both knowing and interdependent, seeking to profit by the distribution of specific forms of narcotics. The bank fraud and program fraud were linked by a common goal of financial fraud through the use of false checks and the misuse of EBT program cards belonging to other persons. The money laundering conspiracy links all the of conspiracies by providing a means for the defendants to more effectively profit from their other criminal activity.

The intercepted calls were made in furtherance of the charged conspiracies. The government presented the transcripts of over 40 telephone calls by various defendants. Each of the calls reflects statements to inform coconspirators or keep them abreast of the conspiracy's status, statements promoting or facilitating the conspiracy, statements prompting further action related to the conspiracy, and statements to reassure or allay the fears of co-conspirators. Thus, the calls reflect discussions of the financing for narcotics purchases, the condition and quality of narcotics produced, the sources of narcotics supplies, the timing of drug transactions, management of disagreements among the conspirators, the price of narcotics and the amount of proceeds from their sale, and the concealment, storage, and distribution or laundering of the proceeds of

---

evidence, including some of the intercepted telephone calls which were also presented at the *James* hearing, and observed:

> The most likely interpretation of all the evidence is that contraband from the storage facility was located in defendant's vehicle at the time of the stop. The most probable understanding of the telephone calls is that Terry Beasley was engaged in an ongoing series of drug transactions with his brother Gerald, that the brothers were discussing the price of narcotics, and that money was being exchanged between the two.

(Dkt. 406, at 27).

criminal activity. All of the statements were made while the conspiracies were ongoing, and all were made with the purpose of advancing the purposes of the conspiracy.

In cross-examination at the hearing, and in subsequent memoranda to the court, defendants challenge the interpretation of some of the intercepted calls. However, as noted earlier, the court reviews the admissibility of the out-of-court statements under a preponderance of the evidence standard. The government has supplied strong evidence of the defendants' participation in multiple and related conspiracies, has presented evidence of statements which, more likely than not, were rendered to advance and further the success of those conspiracies. The court concludes that the government has shown by a preponderance of the evidence that the statements identified at the *James* hearing are admissible pursuant to Rule 801(d)(2)(E).

Lastly, the defendants have sought production of a document pursuant to Fed.R.Evid. 612, 18 U.S.C. § 3500 and Fed.R.Crim.Pr. 26.2.

With respect to a writing used to refresh a witness's recollection, Rule 612 provides:

> Unless 18 U.S.C. § 3500 provides otherwise in a criminal case, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. If the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record.

18 U.S.C. § 3500 provides that the government shall produce "any statement of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."

Rule 26.2 provides that an adverse party may obtain "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony," defining a "statement" as "a written statement that the witness makes and signs, or otherwise adopts or approves." Rule 26.2(a), (f)(1).

The document in question was referenced, without objection or request for production, during the first day of Special Agent Fuller's testimony on one or perhaps two instances.[4] The spreadsheet became an issue during the second day of the hearing, during the government's redirect examination of Fuller. Counsel for the government first asked the Special Agent to describe the notebook:

> Q.  [W]ould you go ahead and describe for the Court what this document is in front of you?
>
> A.  It's a spreadsheet printout that contains information from the reports that were done as part of the surveillance during the wiretaps, as well as notes taken by myself from reviewing the pole cameras at Piatt, and 655 North Estelle, as well as from reviewing the video footage from the DVR inside Tiara's Place restaurant.
>
> Q.  So an accurate statement that this is actually kind of your ongoing working product of putting the case together, would that be an accurate –

---

[4] The spreadsheet was apparently used to refresh Agent Fuller's recollection with respect to Juan Ibarra's appearance on video footage from Tiara's Place. (Tr. 169). Earlier, Special Agent Fuller testified that, "[a]according to the spreadsheet I'm looking at," a total of 287.2 grams of marijuana were recovered from 655 N. Estelle on June 12, 1012. (Tr. 138). The government represents that this spreadsheet was not a document by Agent Fuller, but "A DEA document that lists all the drug evidence recovered in this case. This document was created by a DEA case agent. The document was created using all of the drug lab reports. These laboratory reports have been provided to opposing counsel." (Dkt. 431, at 2).

A.   That's correct.

Q.   -- attempt?

Or have you used this document to try and to give you an overall picture or to try to see or establish any kind of patterns throughout this case?

A.   Yes.

(Tr. 389-90).  Fuller testified that the document was based upon "all this information that has been provided to defense and able to establish the pattern of how -- of the activity in this organization." (Tr. 391).

Counsel for the defense then asked to have the document marked as an exhibit. (Tr. 392). The court determined that the document need not be marked if Special Agent Fuller was using the document to refresh his recollection. However, "if he's going to be testifying from this document as opposed to simply an aid to his recollection, that's something else entirely." (Tr. 392). For anything beyond refreshing his recollection, the court ruled that additional foundation was necessary. (Tr. 394). The government concluded its redirect examination without any additional testimony, and the defendants conducted no recross examination of Special Agent Fuller.

The government opposes the motion for production on three grounds. First, it argues that Rule 612 is inapplicable, because no testimony premised on the document was actually introduced, and the redirect examination ended following the defendants' request for marking of the exhibit. Second, it contends that the document is work-product privilege or subject to attorney client privilege. Third, it argues that Rule 26.2(a)

is inapplicable because the spreadsheet is not a written statement since Special Agent Fuller did not sign the document or approve it. As to each argument, the government emphasizes that the documents collected in the spreadsheet ("law enforcement reports, lab reports, interviews, and other materials") have been independently given to the defendants. (Dkt. 431, at 3).

The defendants argue in reply that, if indeed the notebook it not a "statement" of Special Agent Fuller under 18 U.S.C. § 3500 or Rule 26.2, production of the notebook under Rule 612 becomes mandatory, as that rule applies "[u]nless 18 U.S.C. § 3500 provides otherwise." As to Rule 612, the defendants suggest that the claim of privilege does not justify withholding the document, first, because the government waived the privilege by using the spreadsheet to refresh the witness's recollection, and second, because the notebook or spreadsheet was not work product. Citing Special Agent Fuller's testimony, defendants contend that the notebook was prepared by himself alone, without the assistance or participation of counsel, and was not prepared in anticipation of litigation, but "was prepared to assist him in the overall investigation." (Dkt. 444, at 6).

The summary description of the document by Special Agent Fuller cited by the defendants fails to establish that the document is not work product. His testimony that the notebook was his "ongoing product of putting the case together," does not indicate when it was actually prepared, nor does it foreclose the participation or assistance of counsel for the government in creating the summary.

Nevertheless, even if the document were to otherwise contain work product information, this privilege was waived when the document was used to refresh Special Agent Fuller's recollection. "'As a general rule, when a document is used to refresh one's recollection, any privilege protecting that document must give way.'" *See Audiotext Comm. Network v. US Telcom*, 164 F.R.D. 250, 253 (D. Kan. 1996) (quoting *Moore v. Fieser*, 1989 WL 89940 (D.Kan. June 5, 1989)).

IT IS ACCORDINGLY ORDERED this 1st day of July, 2016, that statements identified by the government at the *James* hearing are deemed admissible at trial. The defendants' Motions for Joinder (Dkt. 425, 426, 429, 430, 445, 446) are granted. Defendant Smith's Motion to Exclude (Dkt. 417) is denied. Defendant's Motion for Production (Dkt. 424) is granted.

                    ___s/ J. Thomas Marten_____
                    J. THOMAS MARTEN, JUDGE